Robert S. Green (State Bar No. 136183)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway, Fourth Floor
Long Beach, California 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710

*Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KACUR, and all similarly situated individuals,<br><br>        Plaintiff,<br><br>vs.<br><br>ALTERYX, INC.,<br><br>        Defendant. | Case No.: 8:17-cv-2222<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

class action

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction because this case arises out of violations of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").  28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.      This Court has supplemental jurisdiction to hear all state law claims under Ohio state law pursuant to 28 U.S.C. § 1367.

3.      This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members, and at least some members of the proposed Class have different citizenship than Alteryx.

4.      Venue is proper in the United States District Court for the Central District for the State of California pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(3) as Defendant's principal place of business is in this District and also because the Defendant's conduct giving rise to this action occurred in this District.

## PARTIES

5.      Plaintiff David Kacur ("Plaintiff") is a natural person residing in the County of Cuyahoga, State of Ohio.

6.      Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).  Additionally, Plaintiff and all members of the Ohio Subclass are "consumers" or "persons" as those terms are defined in ORC 1345.01, *et seq.*

7.      Defendant Alteryx, Inc. ("Alteryx") is a Delaware corporation with its principal place of business in Irvine, California.  Alteryx does business in the State of California and Ohio, as it derives information from Ohio and California consumers which it uses to create its data analytics products.

8.      Defendant Alteryx regularly assembles and/or evaluates consumer

-1-

credit information for the purpose of furnishing consumer reports to third parties in the form of data analytics products, and uses interstate commerce to prepare and/or furnish the reports.  Alteryx is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

9.     Unless otherwise indicated, the use of Alteryx's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Alteryx.

## FACTUAL ALLEGATIONS

### Alteryx Exposes the PII of 123 Million U.S. Households to Prospective Identity Thieves

10.     Alteryx describes itself as "The Leader in Self-Service Data Analytics."[1]  Part of Alteryx's business includes maintaining a software platform, which "enables organizations to dramatically improve business outcomes and the productivity of their business analysts."[2]

11.     One of Alteryx's business partners is Experian Marketing Services ("Experian Marketing").  Alteryx claims it assists Experian to "improve the quality and value of its commercial services," which include to "drive down costs and raise the efficiency of our data delivery infrastructure."[3]

12.     On information and belief, Alteryx obtains or obtained at least some of the data used to perform and provide its data analytics services from Experian Information Solutions, Inc. ("Experian"), particularly information contained in

---

[1]     Alteryx, About us, available at https://www.alteryx.com/about-us (last visited Dec. 19, 2017).
[2]     Alteryx, Inc. Feb. 24, 2017 Form S-1 Registration Statement, at 2, United States Securities and Exchange Comm'n, available at https://www.sec.gov/Archives/edgar/data/1689923/000119312517056475/d28207 1ds1.htm (last visited Dec. 19, 2017).
[3]     Alteryx, *Alteryx Helps Experian Marketing Services Reduce Delivery Time for Client-Ready Output by 70 Percent*, available at: https://www.alteryx.com/sites/default/files/resources/files/case-study-experian.pdf (last visited Dec. 19, 2017).

class action

Experian's "ConsumerView" marketing database.  Experian describes ConsumerView as "the world's largest consumer database," which contains "thousands of attributes on more than 300 million consumers and 126 million households."[4]  The data available through ConsumerView includes, but is not limited to consumer (1) age, (2) gender, (3) marital status, (4) presence of children, (5) family status and position, (6) location, (7) homeowner status, (8) education, and (9) occupation.[5]  This information constituted personally identifiable information ("PII").

13.     Alteryx actively markets and sells data analytics products to third parties which use PII from Experian.  Specifically, Alteryx claims that by "combining the data blending and advanced analytics of Alteryx with the demographic and behavioral data from Experian, you can append unprecedented insight about your customers and prospects, as well as monitor the changing dynamics of households over time."[6]  In particular, Alteryx markets the "Experian ConsumerView household file," which contains "consumer demographics, life event, direct response, property, and mortgage information for more than 235 million consumers and 113 million households."[7]  According to Alteryx this data can be analyzed at the individual level, permitting consumers to "analyze potential consumers based on marital status, gender, education, and occupation group."[8]  Alteryx promises that, "Armed with current and five-year projections on lifestyle, attitude, brand preference, media use, and more, you can accurately predict customer demand today, tomorrow, and in the long term."[9]

---

[4]     *See* Experian, ConsumerView, available at: https://www.experian.com/assets/dataselect/brochures/consumerview.pdf (last visited Dec. 19, 2017).
[5]     *See id.*
[6]     Alteryx, *Experian Marketing Services*, available at: https://www.alteryx.com/partners/experian-marketing-services (last visited Dec. 19, 2017).
[7]     *Id.*
[8]     *Id.*
[9]     *Id.*

class action

14.    At some point over the last four years, Alteryx placed files created as early as 2013—which contained 248 data fields for each of the more than 123 million American households affected, providing detailed insight on topics ranging from interest in sports to financial information—in an Amazon Web Services S3cloud storage bucket. That bucket's permission settings allowed for any user with a free Amazon AWS account to access the sensitive consumer PII contained within. This translated to over a million specified users with access to the contents of the bucket.[10]

15.    On October 6, 2017, an employee of UpGuard, a cyber-security firm, discovered that Amazon Web Services S3cloud storage bucket located in the subdomain "alteryxdownload."

16.    Among the files in the bucket was one entitled, "ConsumerView_10_2013.yxdb."  On information and belief, this was an Experian ConsumerView product from October of 2013, and the file extension was an Alteryx database file format used for large data set analytics.  The file contained 123 million rows, each signifying a different American household.[11]  In each row, 248 columns cross-indexed contained highly detailed information regarding the household addresses, phone numbers, number of adults and children living in the dwelling unit, length of residence, along with highly granulated consumer-purchasing data – in sum, sufficient PII for an identity thief to recreate not only a person's identity, but also their lifestyle.[12]  This information, which was comprised of "the essential details of a core of American households." For example, this data could be cross-referenced with a voter registration database to

---

[10]    Dan O'Sullivan, *Home Economics: How Life in 123 Million American Households Was Exposed Online*, UpGuard, available at: https://www.upguard.com/breaches/cloud-leak-alteryx (last visited Dec. 20, 2017).
[11]    *Id.*
[12]    *Id.*

procure essential details about individual consumers.[13]

17.    On December 19, 2017, UpGuard published its findings regarding investigation of the publicly available data in the storage bucket, which were quickly reported by news organizations later that day.[14]

18.    For the Plaintiff, as with all potential Class members, these news stories were the first time that they had been informed by Alteryx that their information secured by Alteryx had been compromised.

19.    PII is highly valuable information, as evidenced by the recent, massive, data breach of the credit-reporting agency Equifax, in which more than 143 million people had their personal data exposed.[15] The Equifax breach was an unavoidable story in 2017 (not to mention other recent high profile data breaches of companies such as Yahoo and Sonic), which undoubtedly did, or should have, put Alteryx on notice as to how important it is to take adequate measures to protect consumers' PII. The cavalier manner with which Alteryx ultimately handled such sensitive information evinces a failure to adequately protect consumers' PII from a reasonably foreseeable threat.

20.    Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Alteryx in the protection and safekeeping of the Plaintiff's and Class members' personal information.  Alteryx's failures to safeguard consumer PII has damaged Plaintiff and Class members.

---

[13]      Thomas Fox-Brewster, *120 Million American Households Exposed in "Massive ConsumerView Database Leak*, Forbes, available at: https://www.forbes.com/sites/thomasbrewster/2017/12/19/120m-american-households-exposed-in-massive-consumerview-database-leak/#384c64f17961 (last visited Dec. 19, 2017).
[14]      *See id.*; *see also* Ryan Grenoble, *Alteryx Data Breach Exposes Information On 123 Million American Households*, Huffington Post, Dec. 19, 2017, available at https://www.huffingtonpost.com/entry/alteryx-data-breach-123-million-households_us_5a39316ae4b0860bf4ab4e24 (last visited Dec. 19, 2017).
[15]      Lily Newman, *Equifax Officially Has No Excuse*, Wired, available at: https://www.wired.com/story/equifax-breach-no-excuse (last visited Dec. 20, 2017).

class action

*Alteryx's Conduct Violated the FCRA.*

21.     The United States Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to insure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy.  The FCRA imposes duties on the CRAs to protect consumer's sensitive personal information.

22.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information.  Through these protections, Congress recognized a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

23.     Central to the FCRA's privacy protections are restrictions on consumer reporting agencies, or CRAs.  A CRA is a person or entity "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

24.     Alteryx is a "consumer reporting agency" ("CRA") within the cognizance of 15 U.S.C. § 1681a(f) because it acquires and assembles a consumer's PII in commercial transactions, i.e., for use in its data analytics products, after Alteryx first acquires the consumer PII data from Experian.

25.     A central duty that the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.  15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."  To ensure compliance, CRAs must maintain reasonable

procedures to ensure that such third party disclosures are made exclusively for permissible purposes.  15 U.S.C. § 1681e(a).

26.    The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d). Under this broad definition, a consumer's PII qualifies as a "consumer report."

27.    Alteryx failed to properly safeguard the information of Plaintiff and Class members, as required under 15 U.S.C. § 1681e(a).  Alteryx failed to take the necessary precautions required to safeguard and protect Plaintiff and Class members' PII from unauthorized disclosure, as their PII was improperly handled and stored.  Therefore, on information and belief, the PII of Plaintiff and Class members was exposed to an unnecessarily high risk of access from identity thieves and others with no right to access the data.

### *Alteryx's Conduct Also Violates the Ohio Consumer Sales Practices Act*

28.    Defendant's violations of 15 U.S.C. § 1681e(a), as outlined above, also "relat[ed] to the sale . . . of goods or services," i.e., the data-driven transactions Alteryx entered into with third parties which included Plaintiff and Class members' PII implicate the Plaintiff in the data breach.

29.    Alteryx has a duty to protect the Plaintiff and Class members' PII.

30.    Thus, Alteryx's conduct violates ORC 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

*Harms Suffered by Plaintiff and Class Members as a Result of the Data Breach.*

31.     By failing to establish reasonable procedures to safeguard individual consumer's private information, Alteryx deprived consumers nationwide from a benefit conferred on them by Congress under 15 U.S.C. § 1681e(b), which, now lost, cannot be reclaimed.

32.     The harm to Plaintiff and Class members was complete at the time the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of private credit information causes harm in and of itself.

33.     Moreover, there is a high likelihood that significant identity theft and fraud has not yet been discovered or reported, and that Plaintiff and Class members' PII will be offered for sale or actually sold in "dark web" marketplaces. This will result in ongoing harm to Plaintiff and members of the Class as data thieves invariably seek to utilize the PII, or seek to re-sell it.  Thus, Alteryx's wrongful disclosure of Plaintiff and Class members' PII placed them in an imminent, immediate, and continuing risk of harm for identity theft and identity fraud.

34.     Plaintiff and Class members have additionally been harmed as they have (1) been forced to take steps to protect against unauthorized disclosures of their PII, and (2) incurred, intend to incur, and/or considered incurring the cost of obtaining identity protection products.

35.     Plaintiff and Class members have been obligated to retain an attorney to prosecute this case, and are entitled to an award of reasonable attorney's fees and costs.

## CLASS ALLEGATIONS

36.     Plaintiff brings this action pursuant to 15 U.S.C. § 1681e(a), on behalf of a nationwide class of all similarly situated individuals ("Class"), defined as:

> All persons in the United States for whom Alteryx stored private, personal information that was released as a result of the Alteryx data breach disclosed in December 2017.
>
> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

37.     Plaintiff also brings this action pursuant to on behalf of a subclass of all similarly situated individuals in Ohio ("Subclass"), defined as:

> All persons in Ohio for whom Alteryx stored private personal information that was released as a result of the Alteryx data breach disclosed in December 2017.
>
> Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

38.     At this time, Plaintiff does not know the size of the Class because the information is exclusively in the possession of the Defendant, but Plaintiff

believes that the potential number of Class members is so numerous that joinder would be impracticable.  It has been reported that the Class could consist of over 123 million households.  The number of Class members can be determined through discovery, particularly investigation of Alteryx's internal records.

39.    All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach.  These are questions of law and fact common to the proposed Class that predominate over any individual questions.  The questions common to all Class and/or Subclass members include, but are not limited to:

    a.  Whether Alteryx had implemented reasonable procedures to ensure that all third parties who accessed Plaintiff's and Class members' private credit information did so for a permissible purpose;

    b.  Whether Alteryx engaged in consumer fraud in violation of NRS 598.0923(3) with respect to Plaintiff and Subclass members;

    c.  Whether Plaintiff and Class members suffered damages as a result of Alteryx's failure to comply with FCRA and NRS 41.600 based on the improper dissemination of their credit information as a result of the data breach;

    d.  Whether Plaintiff and Class members are entitled to statutory damages; and

    e.  Whether Plaintiff and Class members are entitled to punitive damages.

40.    Plaintiff's claims are typical of the class, as Plaintiff's PII was compromised during the data breach.  All claims are based on the same legal and factual issues.

41.    Plaintiff will adequately represent the interests of the class and does not have an adverse interest to the class.  If individual Class members prosecuted

1  separate actions it may create a risk of inconsistent or varying judgments that

2  would establish incompatible standards of conduct.  A class action is the superior

3  method for the quick and efficient adjudication of this controversy.  Plaintiff's

4  counsel has experience litigating consumer class actions.

5      42.    Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds

6  generally applicable to the proposed Class, making appropriate final declaratory

7  and injunctive relief with respect to the proposed Subclass as a whole.

8              **COUNT ONE: VIOLATION OF 15 U.S.C. § 1681, *et al*.**

9                         **Plaintiff and the Class**

10     43.    The Plaintiff restates all allegations contained in Paragraphs 1

11 through 42 as if fully restated herein.

12     44.    This Count is brought on behalf of the nationwide Class.

13     45.    Based upon Alteryx's failure to have reasonable procedures in place

14 as required by 15 U.S.C. § 1681e(a), Plaintiff's PII was compromised.

15     46.    As a result of each and every willful violation of FCRA, Plaintiff and

16 Class members are entitled to: actual damages, pursuant to 15 U.S.C. §

17 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive

18 damages, as this Court may allow, pursuant to 15 U.S.C. 1681n(a)(2); and

19 reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

20     47.    As a result of each and every negligent non-compliance of the FCRA,

21 Plaintiff and Class members are also entitled to actual damages, pursuant to 15

22 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15

23 U.S.C. § 1681o(a)(2) from Defendant.

24              **COUNT TWO: VIOLATION OF NRS 41.600**

25                      **Plaintiff and the Ohio Subclass**

26     48.    The Plaintiff restates all allegations contained in Paragraphs 1

27 through 42 as if fully rewritten herein.

28

-11-

class action

49.     This Count is brought on behalf of the Plaintiff and the Ohio Subclass.

50.     Plaintiff and the putative Subclass are individually "consumers" within the meaning of O.R.C. 1345.01(D).

51.     As detailed above, *supra*, Alteryx engaged in unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data breach and permitting access to consumer reports by data thieves, for whom Alteryx had no reasonable grounds to believe the data would be used for a proper purchase. Plaintiff and Subclass members relied on Alteryx's implied promise of data security.

52.     Alteryx's conduct violates ORC 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

53.     Alteryx engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Subclass members.

54.     As a direct and proximate result of the foregoing, Plaintiff and Subclass members have suffered injuries including, but not limited to actual damages, and in being denied a direct benefit conferred on them by the Ohio legislature.

55.     As a result of the violations of Alteryx, Plaintiff and Subclass members are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

56.     As a result of the violations of Alteryx, Plaintiff and Subclass members are also entitled to a declaration pursuant to ORC 1345.01(D) that Alteryx conduct in permitting the data breach failed to meet the PCI DSS standards.

class action

1
2

<u>**COUNT THREE: Negligence**</u>
<u>**Plaintiff and the Ohio Subclass**</u>

3

57.    The Plaintiff restates all allegations contained in Paragraphs 1

4

through 42 as if full restated herein.

5

58.    This Count is brought on behalf of the Plaintiff and Ohio subclass.

6

59.    Alteryx negligently breached its duty of care to Plaintiff and Class

7

members by failing to uncover and remedy the known risks which led to the data

8

breach, thereby leading to the dissemination of Plaintiff and Subclass members'

9

PII.

10

60.    Additionally, Alteryx failed to inform Plaintiff and Subclass members

11

of this heightened risk of harm.

12

61.    Plaintiff and Subclass members suffered damages as a result of

13

Alteryx's breach of its duty of care, and are entitled to an award of actual and

14

punitive damages, as well as an award of reasonable attorney's fees.

15

<u>**PRAYER FOR RELIEF**</u>

16

WHEREFORE, Plaintiff DAVID KACUR individually and on behalf of the

17

Class, respectfully requests the following relief against Defendant ALTERYX,

18

INC.

19

A.    For an award of actual damages against Alteryx for all allegations

20

contained in Count One, Count Two, and Count Three;

21

B.    For an award of statutory damages pursuant to 15 U.S.C.

22

§1681n(a)(1) against Alteryx for the allegations contained in Count

23

One for each eligible Class member and the Plaintiff;

24

C.    For an award of punitive damages against Alteryx as the Court may

25

allow for the allegations contained in Count One pursuant to 15

26

U.S.C. 1681n(a)(2), and Count Three under Ohio law;

27

D.    For an award of the costs of litigation and reasonable attorneys' fees

28

pursuant to 15 U.S.C. §1681n(a)(3) and 15 U.S.C. §1681o(a)(2)

against Defendant for each incident of noncompliance of FCRA alleged in Count One, under ORC 1345.02(A) as alleged in Count Two, and under Ohio law alleged in Count Three;

E.      For appropriate equitable declaratory and injunctive relief for the allegations contained in Count Two pursuant to ORC 1345.01(D) and

F.      For all other relief this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all appropriate issues raised in this Complaint.

DATED:  December 20, 2017                  **GREEN & NOBLIN, P.C.**


By:   /S/ Rober S. Green
          Robert S. Green

2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com
-and-
James R. Noblin
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California  90804
Telephone:  (562) 391-2487
Facsimile:  (415) 477-6710

-and-

class action

William B. Federman
Carin L. Marcussen
Joshua D. Wells
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: 405.235.1560
Fax: 405.239.2112
wbf@federmanlaw.com
clm@federmanlaw.com
jdw@federmanlaw.com

Marc E. Dann
Brian D. Flick
**DANNLAW**
P.O. Box. 6031040
Cleveland, Ohio 44103
*Phone: 216.373.0539*
Fax: 216.373.0536
notices@dannlaw.com
counsumernotices@dannlaw.com

Thomas A. Zimmerman, Jr.
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

*Pro Hac Vice Applications to be submitted*

*Attorneys for Plaintiff: DAVID KACUR and proposed class*

CLASS ACTION COMPLAINT